RUSCIANO & SON CORP., Claimant, *v.* STATE OF NEW YORK, Defendant.   (Claim No. 30274.)

Court of Claims, June 30, 1952.

*Murray T. Berman* and *George R. Fearon* for claimant.

*Nathaniel L. Goldstein, Attorney-General* (*James G. Austin* of counsel), for defendant.

RYAN, J. Claimant sued the State of New York for a balance due on a construction contract and for extra work, labor and services performed. Before the trial the State paid and the claimant accepted the amount that the Department of Public Works admitted to be due on its final estimate but the question of the allowance of accrued interest thereon was left for our determination. At the commencement of the trial all items of claimant's demand except three were withdrawn. We awarded claimant interest on the final estimate and dismissed its claim on the three litigated items. Our decision rendered February 24, 1952, is reported (201 Misc. 690). Judgment was entered March 10, 1952, claimant appealed to the Appellate Division, Supreme Court, Third Department, March 26, 1952, the Attorney-General issued certificate of no appeal April 1, 1952.

The claimant now moves in this court " for an order directing the amendment of the judgment entered herein on March 10, 1952, by adding to the sum of $2685.15 awarded thereby to claimant (the interest on final estimate with interest on the award as computed), the sum of $45,717.00 with interest from August 20, 1949; or, in the alternative, directing that the trial of this claim be reopened for submission of further evidence as to the amount payable to claimant for excavation between stations 194 and 206+50 of the trunk sewer involved in this claim; and for such other and further relief as may be ordered in the premises." The motion is opposed by the Attorney-General.

In our decision we found that claimant excavated 15,239 cubic yards of material between stations 194 and 206+50. We also found that the typical expressway section shown on the plans applied only between stations 133+50 and station 194. We found that the contract drawings recited as follows on sheet 55: " General notes. The maximum payment line for unclassified excavation, Item 4S, as shown on the typical expressway section shall define the upper limit of excavation included in the prices bid for trunk sewer Items No. 520. In locations where the expressway typical section does not apply, the sub-grade of pavement and top soil as indicated on the grading plan shall apply. All excavations above these limits shall be paid for under Item 4S." (Finding 13.)

Claimant's counsel now reiterates his argument previously made (see 201 Misc. 698) that since the typical expressway section did not apply to the locations wherein 15,239 cubic yards of excavation was performed claimant should be paid for that amount at the Item 5 rate of $3 per cubic yard. In other words,

on this point, claimant asserts that this court has erred and asks it now, after the entry of judgment and appeal taken, to review its own decision. This we do not have the authority to do. (*Herpe* v. *Herpe*, 225 N. Y. 323; *Corr* v. *Hoffman*, 256 N. Y. 254; *Schenectady Trust Co.* v. *Emmons*, 290 N. Y. 225; *Miltenberg & Samton* v. *Falkingham*, 273 App. Div. 631; *Hough* v. *Light*, 275 App. Div. 299; *Matter of Cupo* v. *McGoldrick*, 278 App. Div. 108. See article, N. Y. L. J., Sept. 7, 1948, p. 376, col. 1.)

We possess at most no greater inherent or incidental powers than the Supreme Court. (*West 158th St. Garage Corp.* v. *State of New York*, 256 App. Div. 401.) Counsel for claimant is cognizant of this last-cited decision but calls attention to its date, viz., March 8, 1939, and to the fact that effective July 1, 1939, the Court of Claims Act was amended. In particular, the amendment relied upon appears in section 9 of the Court of Claims Act which is entitled " Jurisdiction and powers of the court " of which subdivision 8 reads in part as follows: " 8. To open defaults; to vacate, amend, correct, or modify any process, claim, order or judgment, in furtherance of justice for any error in form or substance ".

This provision of the practice act supplanted former section 14 of the Court of Claims Act which was repealed and which read as follows: " § 14. *Court rules and procedure.* The court may establish rules for its government, and the regulation of practice therein; prescribe the forms and methods of procedure before it, vacate or modify judgments, and grant new trials, and except as otherwise provided in said rules and regulations, or the civil practice act, the practice shall be the same as in the supreme court."

Counsel argues that the distinction between the two provisions is vital and that it is a fair deduction that the Legislature moved promptly after the decision rendered by the Appellate Division, Third Department, on March 8, 1939, to give to the Court of Claims express authority and " power the Supreme Court does not have because no grant of such power is found anywhere in the Civil Practice Act ". Unusually prompt indeed was the action of the Legislature if motivated by the decision in the *West 158th Street* case for the bills which resulted in chapter 860 of the Laws of 1939 (the general revision of the Court of Claims Act) were introduced in the Senate March 13, 1939 (Pr. No. 1651, Int. 1451, Mr. Feinberg) and in the Assembly March 9, 1939 (No. 2141, Int. 1909, Mr. Steingut). Moreover, research

discloses that the identical language appearing in subdivision 8 of section 9 of the Court of Claims Act, hereinabove quoted, appeared in proposed legislation for the complete revision of the Court of Claims Act at a much earlier date. (See Senate No. 2368, Int. 1953, April 15, 1937, Mr. Kleinfeld, and Assembly No. 3131, Rec. 643, April 26, 1937.) Moreover, the bills were reintroduced in the 1938 Legislature. (Senate 2189, Int. 1867, Assembly 2466, Int. 2114.) And the language of proposed sub-division 8 of section 9 was identical with that ultimately adopted in 1939.[1] We would be reluctant in any event to make a ruling which would indicate a belief that the Legislature intended to confer upon the Court of Claims appellate jurisdiction or any greater power over its own judgments than the Supreme Court exercises over its decrees but the record discloses that the assumption of claimant's counsel in respect to cause and effect is without foundation.

Nor does claimant's alternative proposal stand on a firmer footing. It is that the trial should be reopened for submission of further evidence as to the amount payable to claimant for excavation between stations 194 and 206+50. To understand counsel's argument on this point it is necessary to make further reference to the provisions of the contract and to our findings. We have found that the contract plans indicated that no grading was to be done between station 194 and station 206+50; that no topsoil was to be placed between those stations; that between those points the contract plans indicated no sub-grade of any new pavement and showed no elevation of the existing ground. Counsel asserts that in accordance with the last sentence of the first paragraph of the general notes, hereinabove quoted, viz., " All excavation above these limits shall be paid for under Item 4S ", the State paid claimant under Item 4S for all excavation between the original surface of the ground and the elevation of the typical expressway section from station 133+50 to station 194. But, he says " no payment under either Item 4S or Item 5 has been made for any of the excavation between sta-tions 194 and 206+50 " and, he pleads, that " since the typical expressway section fixed the dividing line for payment of the excavation between Items 4S and 5, and in the area between

---

[1] Actually, a general revision of the Court of Claims Act was proposed as early as December, 1934, at which time there were consultations with the mem-bers of the court. Copies of the proposed act, as submitted to the 1937 Legis-lature, were distributed to the Judges by the draftsman, not a legislator, in December, 1936.

station 194 and station 206+50 said dividing line did not exist, claimant should be paid therefor from the existing ground to the sub-grade of the trunk sewer under Item 4S."

Moreover, avers the moving affidavit, if claimant be not entitled to payment for the 15,239 yards at the Item 5 rate, then its argument that it is entitled to be paid as for unclassified excavation under Item 4S is supported by the court's finding that between station 194 and station 206+50 the trunk sewer was laid in a trench outside and approximately 160 feet east of the center line of the Van Wyck Expressway and that such trench was backfilled and restored to the original elevation of the ground, and by the fact that the general notes on sheet 55 of the contract drawings contained a second paragraph which recited as follows: " In locations where the existing surfaces are restored, the quantity of excavation to be paid for under Item 4S shall be that within a section, having a base width at the upper limit of Items 520, of 10 feet wider than the outside dimension of the concrete trunk sewer section or completed water supply conduit structure, and side slopes of 1½ out of 1 upward."

These allegations present an entirely new issue. We have already determined that the defendant has paid the claimant for the total number of linear feet of trunk sewer installed by claimant under Items 520A, 520B and 520C at the respective prices bid per linear foot and that the price bid per linear foot included the excavation necessary to install those trunk sewer items. Whether or not the claimant performed more excavation under Item 4S than the quantity for which the defendant paid it was an issue not pleaded by the claimant. Instead, claimant accepted the amounts which the State of New York by its final estimate conceded were due on each of the line items of the contract, including 4S, save only the three which were controverted and upon which we have made our determination. Thus it seems that any dispute between the parties on Item 4S has been resolved by their own actions and that the matter is *res judicata.* (*Cauldwell-Wingate Co.* v. *City of New York,* 252 App. Div. 559, affd. 278 N. Y. 477.) If it be the fact that in computing final quantities the State engineers did not allow the claimant the full cubic yardage of excavation and backfill which it performed and for which it was entitled to be paid under Item 4S, it is not a fact newly discovered to the claimant but one which its officers must have known all along and which they withheld from the court. Thus nothing is presented dehors the record to justify the court in vacating and setting aside the

judgment. (*Matter of Cupo* v. *McGoldrick, supra*; *Merritt* v. *Merritt,* 259 App. Div. 242.) It has been held that the provisions of section 522 of the Civil Practice Act for setting aside a judgment for error in fact not arising upon the trial are not available to a defendant who has withheld from the court facts of which he was aware at the time of the original trial. (*Boslov* v. *Boslov,* 177 Misc. 817. See, also, *D'Auria* v. *D'Auria,* 200 Misc. 939.) A necessary corollary is that where a plaintiff has submitted his cause of action on one theory and has not succeeded he may not try it anew on a different theory merely because of his own neglect to present to the tribunal all of the facts within his possession and knowledge.

The motion is denied. Submit order.